FILED
SUPERIOR COURT
OF GUAM

2021 JUL -6 PM 1: 50

CLERK OF COURT

By:_____

## IN THE SUPERIOR COURT OF GUAM

MARK C. CHARFAUROS,

               Petitioner,

    vs.

CIVIL SERVICE COMMISSION,

               Respondent,

    and

GUAM POLICE DEPARTMENT,

               Real Party in
               Interest.

SPECIAL PROCEEDINGS
CASE NO. SP0126-19

**DECISION AND ORDER**

## INTRODUCTION

This matter is before the Honorable Vernon P. Perez on Petitioner Mark C. Charfauros's ("Charfauros") Amended Petition for Judicial Review. Charfauros is represented by Attorney F. Randall Cunliffe; Respondent Civil Service Commission ("CSC") is represented by Attorney Eric Miller; and Real Party in Interest Guam Police Department ("GPD") is represented by Assistant Attorney General Marianne Woloschuk. Having reviewed the pleadings and the record, the Court now issues the following Decision and Order.

## BACKGROUND

This matter involves judicial review of a CSC Decision and Order in Adverse Action Appeal Case No. 17-AA03T. The subject of the adverse action appeal was Charfauros's termination from GPD in 2017 based on insubordination. The CSC held two days of hearings

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 1 of 12

on the merits for Charfauros' appeal on March 19 and 21, 2019. (Am. Petition ¶ 29, Mar. 16, 2020). On March 21, 2019, after receiving all the evidence and hearing arguments, the CSC voted 5-0 in favor of GPD. The CSC subsequently issued a Decision and Order on May 9, 2019, memorializing the vote of 5-0 to sustain the adverse action resulting in the termination of Charfauros from GPD. *Id.* at ¶ 31; *see also* Am. Petition, Ex. 1. The CSC found that it was "clear that [Charfauros] was insubordinate when he disobeyed Chief Cruz and that he failed to fulfill his duties based upon the Law Enforcement Code of Ethics and his Oath of Office." (Am. Petition, Ex. 1 at 7).

On March 16, 2020, Charfauros filed an Amended Petition for Judicial Review requesting that the Court reverse the Decision and Order issued by the CSC in Adverse Action Appeal Case No. 17-AA03T.

On August 20, 2020, GPD filed its Answer to the Amended Petition.

On July 29, 2020, Charfauros filed a Submission of the Certification of the Record from the Civil Service Commission. The July 29, 2020 Certification of the Record included documents filed with the Civil Service Commission for Adverse Action Appeal Case No. 17-AA03T.

On October 8, 2020, a second and third Submission of the Certification of the Record from the Civil Service Commission were filed. The Submission of the Certification of the Record from the Civil Service Commission filed on October 8, 2020 at 4:16 p.m. included two attached DVDs, which contained (1) PNC News, Jessie Lujan Audio, and KUAM News clips; and (2) three body cam videos filed with the CSC in the CSC adverse action appeal.[1] The Submission of the Certification of the Record from the Civil Service Commission lodged on October 8, 2020 at 4:37 p.m. included the transcripts from the adverse action appeal hearings before the CSC on March 19, 2019, March 21, 2019, and May 9, 2019.

On December 30, 2020, Charfauros filed his brief. On February 19, 2021, GPD filed its Opposition brief; and on March 3, 2021, Charfauros filed his Reply brief. The CSC previously

---

[1] The Court notes that while the cover page of this submission references transcripts from three hearings, the attachments and Supplemental Certification of the Record by the CSC reference the DVDs.

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 2 of 12

filed a Notice of No Position on September 24, 2019. The Court subsequently placed the matter under advisement.

## DISCUSSION

Charfauros moves the Court to (1) issue an order finding the Decision and Order issued by the Civil Service Commission upholding the termination for exercising his rights to free speech is without legal authority and reversed; and (2) to issue an order finding the Decision and Order issued by the Civil Service Commission upholding the termination for insubordination is not supported by substantial evidence. (Am. Petition at 5). If the Court does void the adverse action, Charfauros requests the Court enter a more proportionate sanction. *Id.*

## I. Jurisdiction and Standard for Judicial Review

Judicial review in this matter is governed by 5 G.C.A. § 9240, which provides:

> Judicial review may be had of any agency decision by any party affected adversely by it. If the agency decision is not in accordance with law or not supported by substantial evidence, the court shall order the agency to take action according to law or the evidence.

*See also* 4 G.C.A. § 4403(d) ("[t]he [CSC's] decision shall be final but subject to judicial review."). Thus, in reviewing a petition for judicial review, the Court will not disturb an agency's factual findings if they are supported by substantial evidence and in accordance with Guam law. *See* 5 G.C.A. § 9240; *see also Guam Memorial Hospital v. CSC (Chaco)*, 2015 Guam 18 ¶ 15.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chaco*, 2015 Guam 18 ¶ 15 (internal quotations and citations omitted). This standard is extremely deferential; a reviewing court should uphold an agency's findings unless "the evidence presented would compel a reasonable factfinder to reach a contrary result." *Id.* at ¶ 16 (citations omitted). "If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgement for that of the agency." *Id.* (citations omitted). Whether the agency's decision was conducted in accordance with the law is reviewed *de novo*. *Guam Waterworks Authority v. CSC (Mesngon)*, 2014 Guam 35 ¶ 5.

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 3 of 12

## II. Whether Charfauros's First Amendment rights were violated

Charfauros first argues that the CSC's Decision and Order upholding his termination for exercising his rights to free speech is without legal authority and must therefore be reversed. *See generally,* Charfauros Brief, Dec. 30, 2020. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. The Organic Act of Guam further provides that "[n]o law shall be enacted in Guam . . . abridging the freedom of speech." 48 U.S.C.A. § 1421b(a). "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006) (citations omitted). "When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Id.* at 418 (citations omitted).

To determine whether a government employee speaking as a private citizen may exercise his first amendment right to free speech, the Court must first determine whether the speech in question relates to a matter of public concern. *Pickering v. Bd. of Educ.,* 391 U.S. 563, 568 (1968). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-49 (1983). If the speech concerns a purely personal matter, then the government employee does not enjoy first amendment protections and the court's inquiry ends. *Pickering,* 391 U.S. at 568. If the speech relates to a matter of public concern, then the court must balance the interests of the government employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. *Id. See also Garcetti,* 547 U.S. 418 ("The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any member of the general public."). This "balance requires full consideration of the government's interest in the effective and efficient fulfillment of its responsibilities to the public." *Connick,* 461 U.S. at 150.

In this case, Charfauros argues that the evidence clearly shows that he was speaking as a private citizen and not as a representative of the police department. (Charfauros Brief at 8, Dec.

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 4 of 12

30, 2020). Charfauros further sets forth that the "speech clearly addressed a matter of public concern." *Id.* Charfauros "took to the media to explain that he had told [the officers] to remove their vehicles from the middle of the road to stop [the] illegal search." *Id.* at 9. GPD on the other hand argues that Charfauros's statements to the press were made in the course of his official duties because he "told the investigators that his duties as colonel and police commander included coordinating with the media and acting as a spokesperson for the media on behalf of GPD." (GPD Brief at 10, Feb. 19, 2021). Alternatively, GPD argues that Charfauros's statements to the press concerned purely personal matters not of public concern under the *Pickering*, 391 U.S. 563, balancing test. *Id.* at 10-11.

In December 2016, Charfauros held GPD's highest ranking classified uniformed officer of Police Colonel and Police Commander. (Testimony of former Chief Joseph I. Cruz, Tr. 20: 1- 15, Mar. 19, 2019; Testimony of Charfauros, Tr. 56: 11-20, Mar. 19, 2019). At that time, the only person with a higher rank than Charfauros was former GPD Chief Joseph I. Cruz ("Chief Cruz"). (Testimony of Chief Cruz, Tr. 18: 23-25, Mar. 19, 2019; Testimony of Charfauros, Tr. 57: 22-25). As Colonel and Police Commander, Charfauros' duties included interacting with the community, coordinating with the media, and acting as a spokesperson for the media. (Testimony of Charfauros, Tr. 56: 21-25; 57: 1-21, Mar. 19, 2019).

On December 24, 2016, officers from the Agat Precinct Command responded to a complaint of fireworks. (Testimony of Chief Cruz, Tr. 23-24, Mar. 19, 2019). At some point, Charfauros arrived at the scene and began admonishing the police officers for their actions at the scene by screaming and using obscenities. *Id.* at 24: 1-10. The confrontation was captured by a body cam worn by one of the responding officers. *Id.* at 23: 8-13; *see also* Mgt. Ex. M137 (Body Cam DVD). Chief Cruz viewed the body cam footage. (Testimony of Chief Cruz, Tr. 23: 14-15, Mar. 19, 2019). After watching the footage, Chief Cruz was in "dismay," and decided that the matter needed to be investigated. *Id.* at 24-25. Chief Cruz thought that there could potentially have been violations of departmental rules and regulations regarding professional conduct. *Id.* at 48-49.

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 5 of 12

On December 27, 2016, Chief Cruz met with Charfauros and told him that there was a need for an administrative investigation. *Id.* at 25-26. At the meeting, Charfauros told Chief Cruz that it was his intention to speak to the press because he wanted his side of the story to be heard. *Id.* at 26; *see also* Testimony of Charfauros, Tr. 60: 15-20, Mar. 19, 2019. Charfauros said he asked the chief to speak to the media because that the media was only getting one side of the story. (Testimony of Charfauros, Tr. 58-60, Mar. 19, 2019). Charfauros surrendered his gun and badge that morning, and was supposed to have also signed a memorandum before leaving the meeting with Chief Cruz acknowledging his was being placed on administrative leave. *Id.* at 74: 22 – 75: 8.

Based on this testimony, the Court does not find that Charfauros spoke to the media in his official capacity as a spokesman for the media, as first argued by GPD. Charfauros surrendered his badge and gun on December 27, 2016 and was placed on administrative leave that same day. These events occurred prior to Charfauros speaking to any media. Thus, Charfauros's statements were made as a private citizen. The Court must therefore determine whether Charfauros's speech relates to a matter of public concern, as a government employee speaking as a private citizen. *See Pickering*, 391 U.S. at 568.

The Court finds that Charfauros's speech concerned a purely personal matter. Although portions of Charfauros's interviews with the media referenced what he believed to be illegal searches during the Agat fireworks incident,[2] Charfauros emphasized that the purpose of him

---

[2] The Notice of Final Adverse Action set forth the following findings:

> K. During your interview with Jesse Lujan, the Buzz Radio Talk Show, KUAM on December 28, 2016, you stated the police officers were conducting illegal house-to-house searches.

> L. During your interview with Patti Arroyo Radio Talk Show, K-57 on December 29, 2016, you stated, "Why are you doing searches without permission," referring to the officers at the scene.

> M. During your interview with Janela Carrera, Pacific News Center on December 28, 2016, you stated that the officers did not get permission to do a search; officers had no reason to conduct a search; no probable cause existed; and the officers were disrespecting the constitutional rights of the citizens.

(July 29, 2020 Submission of the Certification of the Record from the CSC, Mgt. Ex. M29).

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 6 of 12

speaking to the press was to give his side of the story. Charfauros testified that he wanted to ensure that no one thought he was attending the party, rather that he arrived on the scene to address the complaint; that he was not at his uncle's house because his uncle did not live there; and his speech was slurred not because he was drunk but because he was suffering from Bell's palsy. (Testimony of Charfauros, Tr. at 78: 13-25, Mar. 19, 2019). The CSC found that "not once during his testimony did the Employee state that it was his goal to report wrongful acts to the public. Rather, he testified that he needed to get out his side of the story and wished to clear the record. . . By his testimony it is clear that Employee acted out of his own self-interest and not out of any desire to advise the media of a matter of particular concern." (Am. Petition, Ex. 1 at 6). As Charfauros's statements to the media related to his purely personal concerns about his reputation, his speech does not enjoy the protections of the First Amendment.

Even if the Court were to accept the characterization of Charfauros's speech as to inform the public of an important matter of public concern (i.e., regarding officers conducting an allegedly illegal search), the Court must still weigh whether Charfauros's interest as a citizen in commenting on the search in Agat outweighs GPD's interest in promoting the efficiency of the public services performed by GPD officers. "So long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Garcetti*, 547 U.S. at 419; *see also Pickering*, 391 U.S. at 568 (balancing speech against "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."). The CSC determined that "[t]he restriction on speaking out was narrowly tailored and limited in time, and was necessary to insure a fair, unbiased administrative investigation." (Am. Petition, Ex. 1 at 6). "The order not to speak out during the investigation was limited in duration since any adverse action after sixty (60) days would be void as a matter of law. [Charfauros] jeopardized the ability of GPD to conduct a fair and unbiased investigation by speaking out in the public forum to the media prior to the completion of the investigation." *Id.*

In December 2016, an administrative investigation into the fireworks incident in Agat would have been conducted within sixty (60) days. *See* 4 G.C.A. § 4406 (setting forth the 60-

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 7 of 12

day rule for adverse actions prior to its amendment by P.L. 34-145:1 (Dec. 13, 2018), which extended the time period to 90 days). Charfauros was the highest ranking uniformed classified officer and second in command at GPD. Charfauros testified that he was aware of how administrative investigations are conducted and that they are confidential. (Testimony of Charfauros, Tr. 61-62, Mar. 19, 2019). As the CSC found, "[t]he act of insubordination by [Charfauros] could erode confidence in the command and cause lower ranked officials to question why they should follow the rules if their own manager does not follow the rules." (Am. Petition, Ex. 1 at 7). Pertinent considerations in performing the *Pickering* balancing test include "whether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Pickering*, 391 U.S. at 570-73. "These considerations, and indeed the very nature of the balancing test, make apparent that the state interest element of the test focuses on the effective functioning of the public employer's enterprise. Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong state interest." *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

The Court finds that Charfauros's interest as a citizen in commenting on the Agat search does not outweigh GPD's interest to conduct an administrative investigation. The investigation was to be conducted in a limited period of time, and any restriction on Charfauros's speech would be necessary to prevent any influence on witness statements to investigators. Accordingly, the Court finds that Charfauros did not suffer a violation of his right to free speech.

## III. Whether Charfauros was ordered not to speak to the media

Charfauros next argues that the CSC's Decision and Order upholding his termination for insubordination was not supported by substantial evidence. *See generally,* Charfauros Brief, Dec. 30, 2020. Charfauros argues that his speaking to the media was not insubordination

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 8 of 12

because GPD did not issue an order for him not to speak to the media. *Id.*; *see also Charfauros* Reply Brief at 3, Mar. 3, 2021.

Charfauros testified that he knew he needed to get clearance from the chief before speaking to media, and told a reporter who contacted him before his meeting with the chief that he needed to get clearance before speaking with her. (Testimony of Charfauros at 61, Mar. 19, 2019). Chief Cruz did not give Charfauros permission to speak to the press, instead telling him that he needed to confirm with the director of the Department of Administration ("DOA") to ensure that no rules or regulations were being violated. (Testimony of Chief Cruz, Tr. at 26: 15-25, Mar. 19, 2019). Chief Cruz did not subsequently call or tell Charfauros personally that DOA Director Christine Baleto advised him not to have Charfauros speak to anyone about the administrative investigation until it was complete. *Id.* at 27: 1-8; 36: 6-15. Instead, a form memorandum was served on Charfauros at 4:15 p.m. on December 27, 2016 (the same day). The memorandum included the following statement:

> You are hereby further advised to refrain from making comments and remarks outside of the case investigation, until the investigation is completed.

(July 29, 2020 Submission of the Certification of the Record from the CSC, Mgt. Ex. M20 (Admin. Leave Mem., Dec. 27, 2016)). This was "boilerplate" language prepared by GPD's legal section, and is given to every employee placed on administrative leave. (Testimony of Chief Cruz, Tr. at 42, 44, 45, Mar. 19, 2019; Testimony of Charfauros, Tr. at 83, Mar. 19, 2019). Chief Cruz testified that he previously had meetings where Charfauros was also present, where it was communicated to others present not to speak about an investigation until it was complete. (Testimony of Chief Cruz, Tr. at 30-31, Mar. 19, 2019). Chief Cruz further testified that although the statement "advised" the employee not to speak, he intended it to be an order. *Id.* at 42: 24 – 43: 2. Chief Cruz testified that because of the paramilitary nature of GPD with a chain of command, he believed that Charfauros would have understood the advisement to be an order. *Id.* at 43: 3-20. Chief Cruz thought the memorandum was sufficient and that Charfauros, as the highest classified employee, would have understood it. *Id.* at 50: 3-15.

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 9 of 12

Charfauros did not contact Chief Cruz to seek clarification after receiving the memorandum placing him on administrative leave. (Testimony of Charfauros, Tr. at 69, Mar. 19, 2019). Charfauros was aware of how administrative investigations are conducted and that they are confidential. *Id.* at Tr. 61-62. Charfauros relied on Chief Cruz's assertion that he was going to call him "because he's my cousin," and that he was waiting for his phone call at 5:00. *Id.* at Tr. 69-70. Charfauros indicated that he believed that when Chief Cruz told him "Don't worry, I'll call you by 5:00," that meant "If I don't call you by 5:00, then it means you can go ahead and talk to the media." *Id.* at Tr. 75: 14-18. The Internal Affairs Investigation into this matter also noted that "Charfauros stated that if Chief Cruz did not call him back that day, it would mean that he is good to go with the media interview." (July 29, 2020 Submission of the Certification of the Record from the CSC, Management Ex. M83 (Internal Affairs Investigation Findings, Ex. A)).

Based on the testimony, the CSC found that "Chief Cruz's statement to Employee that he could not 'gag' him was not permission to speak, but simply a recognition that the Chief could not physically stop the Employee from speaking should he choose to do so. The fact that Chief Cruz further told Employee that if he did speak out that it 'was on [Employee] and that it could be used against him,' is further indication that permission was not given." (Am. Pet., Ex. 1 at 5). The CSC further found that Chief Cruz did get back to Charfauros after speaking with the DOA Director "that same day when he had served on Employee the Notice of Administrative Leave containing the directive that Employee not speak outside of the investigation. This constituted the Chief Cruz's final decision in writing to Employee. Permission was clearly not given." (Am. Pet. Ex. 1 at 6).

The Court finds that there was substantial evidence to support the CSC's findings. Further, as GPD argues in its brief, "[i]t falls to the trier of fact to resolve conflicts in the testimony, witness credibility, and decide the ultimate facts in the case." (GPD Brief at 13 (quoting *People v. Quintanilla,* 2001 Guam 12 ¶ 37)). At the hearing on the merits, Chief Cruz testified that he did not give Charfauros permission to speak to the press, while Charfauros testified that he was given permission to speak to the press. The CSC, as trier of fact, found

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 10 of 12

Chief Cruz's testimony that he did not give Charfauros permission credible. This Court is only to determine whether the CSC's decision is based on "relevant evidence as a reasonable mind might accept to adequate to support a conclusion." *Chaco,* 2015 Guam 18 ¶ 15 (internal quotations and citations omitted). Accordingly, the Court finds that there was substantial evidence to support a reasonable conclusion that Charfauros was insubordinate by speaking to the press in contravention of Chief Cruz's order not to do so.

**IV. Whether termination of employment was an appropriate sanction for Charfauros's misconduct**

Alternatively, Charfauros argues that if his conduct was subject to an adverse action by management, termination was not an appropriate sanction. *See generally,* Am. Petition, Mar. 16, 2020; Charfauros Brief at 10, Dec. 30, 2020.

Under the Government of Guam Department of Administration's Personnel Rules and Regulations, management may terminate a government employee as the maximum penalty for insubordination as a first offense. (DOA Personnel Rules & Regulations § 11.402 (Conduct) B). GPD argues that the termination of Charfauros in this case amounted to progressive discipline, noting that the record showed Charfauros had three prior demotions: from Airport police chief to GPD captain; a demotion by former Chief Bordallo; and a demotion by former Chief Cruz. (GPD Brief at 4).

At the time of the December 2016 incident, Charfauros was the highest uniformed classified employee. GPD has an established chain of command. This was not Charfauros' first infraction. In light of these facts and the DOA Personnel Rules and Regulations, the Court finds that termination was an appropriate sanction and will not disturb the CSC's Decision and Order sustaining GPD's adverse action against Charfauros.

//

//

//

//

//

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order

Page 11 of 12

# CONCLUSION

For the foregoing reasons, the Court hereby affirms the CSC's Decision and Order sustaining GPD's adverse action on the termination against Charfauros in Adverse Action Appeal Case No. 17-AA03T.

**IT IS SO ORDERED** this 6th day of July, 2021.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
AG, Eric Miller
Cynthia J. Cook

Date 7/6/21 Time: 2:14 pm

Edna M. Nego
Deputy Clerk, Superior Court of Guam

*Charfauros vs. CSC (GPD)*
Case No. SP0126-19
Decision and Order